**BOREN v. BURGESS et al.**

**Civ. No. 2655.**

United States District Court
E. D. Oklahoma.

May 31, 1951.

A. C. Kidd, Wewoka, Okl., for plaintiff.

Horsley, Epton & Culp, Wewoka, Okl. and Cleon A. Summers, U. S. Atty., and Francis Stewart, Asst. U. S. Atty., Muskogee, Okl., for defendants.

WALLACE, District Judge.

### Statement of Case

This action was instituted in the District Court of Seminole County, Oklahoma, against defendants and the relief sought was a judicial determination that plaintiff was the owner of a mineral interest in certain restricted Indian lands, or in the alternative, for a rescission of a warranty deed and the return of the purchase money or reformation of the deed to include a mineral interest in a tract of restricted Indian land. Notice was served on the Area Director of Indian Affairs, as required by the Act of Congress of April 12, 1926, sec-

tion 3, 44 Stat. 239. By authority of that Act, the case was removed to this court and leave was granted the United States to intervene.

### Findings of Fact

#### I.

John Caesar (or Burgess), a full-blooded Seminole Indian, Roll No. 451, was allotted, among other lands, the following described land in Seminole County, Oklahoma, as a portion of his 200 acre allotment: The East Half of the Southwest Quarter, and the Northwest Quarter of the Southwest Quarter, and the North Half of the Southwest Quarter of the Southwest Quarter in Section 26, Township 6 North, Range 6 East, and the West Half of the Southeast Quarter of the Southeast Quarter of Section 20, Township 6 North, Range 6 East, Seminole County, Oklahoma.

It is admitted by all parties to this action that John Caesar owned fee simple title to the above described land, subject to the restrictions on alienation provided for by Acts of Congress.

#### II.

In 1920, John Caesar executed a departmental oil and gas lease to one James A. Twitchell, which covered the above described lands. Production was obtained during the primary term of the lease on the West Half of the Southeast Quarter of the Southeast Quarter of Section 20. Oil production from this twenty acres has been continuous and is being produced in paying quantities to this date.

The Rudco Oil and Gas Company, a defendant in this action, is the owner of the oil and gas leasehold interest in the above described oil producing twenty acres. It acquired its interest in 1940 and holds by virtue of the lease of 1920.

There has never been oil or gas production on Caesar's allotted lands in Section 26 and no effort has been made to cancel any portion of the leased premises; as a result, the production on the twenty acre tract in Section 20 holds the 1920 lease in full force and effect, except as to a twenty acre tract of the original allotment which was released some years ago.

#### III.

At the death of John Caesar on April 11, 1940, his heirs were judicially determined in Case No. 4888, in the County Court of Seminole County, Oklahoma. Onnie Burgess, nee Cully, a full-blooded unenrolled Seminole Indian, by the decree of that court inherited an undivided 1/13th interest in the allotted lands of the deceased.

#### IV.

On October 28, 1948, Onnie Burgess, nee Cully, joined by her husband, Bunnie Cully, petitioned the County Court of Seminole County, Oklahoma, to approve a warranty deed executed by them as grantors to E. G. Kendall as grantee. This deed purported to convey all of the grantor's interest (being an undivided 1/13th) in the East Half of the Southwest Quarter, and the Northwest Quarter of the Southwest Quarter and the North Half of the Southwest Quarter of the Southwest Quarter of Section 26, Township 6 North, Range 6 East.

The Seminole County Court entered an order setting the petition for hearing on November 12, 1948, providing for notice thereof for ten days prior to the hearing, posting of notices, and mailing notice to the probate attorney and service on the Area Director of Indian Affairs. The notices and service requirements were complied with and the proceedings to approve the deed were held on November 12, 1948. The land was offered at public auction, as required by law, and Lyle H. Boren, plaintiff, offered the highest and best bid in the amount of $601.00. The court entered an order approving the warranty deed to the land to Boren. A deed to Boren for the land as described in the petition, order setting same for hearing, notices and the order of approval, was executed by Onnie Burgess, nee Cully, and her husband and delivered to plaintiff, which deed was accepted by him.

#### V.

This action arose because of certain remarks made at the sale by Hugh A. White, United States Probate Attorney, for the Department of the Interior. During the course of the bidding, White made the following statement: "If the court please, I

want to read this to these fellows. (Reads from oil and gas inspector's report) The subject land is covered by departmental oil and gas lease No. so and so, which lease covers the Southwest of Section 26, and the West half of the Southeast of the Southeast of Section 20, both in 6 North, 6 East. The portion of the lease which is in Section 20 produces oil and gas, and the remainder of the lease is held by production on this 20 acres. Also, the royalty is divided among the landowners of the entire 180 acres in proportion to their holdings. Therefore, the owner of the 1/13th interest in the subject 140 acres is entitled to 7/117ths of the royalty, revenue from lease No. 42325, referred to above. There were two Cromwell sand wells drilled on this lease, in Section 20, in 1930; and the lease is still producing about 12 barrels of oil per day. The royalty from oil averages about $115.00 per month, and the royalty on casinghead gas about $5.00 per month, for a royalty income of $120.00 per month. 7/117ths of $120.00 is $7.18. The value of this royalty is $6000.00. The Southwest of Section 26 is uncondemned and untested; and has an oil and gas value of $10.00 an acre or $1600.00. The oil and gas value of the lands under said lease No. 42325 is $6000.00 plus $1600.00 or $7600.00. 7/117ths of this amount is $454.70. He appraises this interest at $454.70."

## VI.

By this action the plaintiff seeks to have the court to declare him the owner of an undivided 7/117th royalty interest in the producing twenty acres in Section 20, or in the alternative, to rescind the warranty deed conveying the undivided 1/13th interest in the 140 acres in Section 26 and a return of the purchase price or a reformation of the deed to include the undivided 7/117th mineral interest in the twenty acre tract in Section 20.

## Conclusions of Law

### I.

■ The court has jurisdiction over the parties and subject matter of this action.

### II.

■ The alienation of restricted Indian land is governed by Acts of Congress and the courts universally have held that the controlling statutes must be strictly complied with. See Smith v. Williams, 78 Okl. 297, 190 P. 555 and the cases cited therein.

■ In the instant case the judicial proceedings which culminated in the sale by warranty deed to plaintiff of an undivided 1/13th interest in a 140 acre tract in Section 26 described the tract of land to be conveyed and no acts of the parties or a representative of the Government or Indian grantors, irrespective of their real or apparent authority, can enlarge the interest conveyed by the deed; so, regardless of the merits of plaintiff's claim on the grounds of misrepresentation, this court cannot reform the deed to convey a mineral interest in the producing tract in Section 20.

### III.

Nor is the plaintiff entitled to have the deed rescinded. Assume *in arguendo* that the probate attorney had the authority as an agent to bind the restricted Indian grantors, the statements made by him at the sale do not constitute grounds for rescission of the deed.

■ A mutual mistake of law is not grounds for rescission or cancellation of a deed or contract. The probate attorney stated that an owner of an interest in the 140 acre tract in Section 26 was entitled to participate in the royalty from the producing tract in the proportion his interest bore to the whole 180 acre tract. As will be discussed below, this is an erroneous legal conclusion. The facts, however, upon which he based his remarks are a matter of record and the purchaser of land at a judicial sale is bound by the record under which he purchases; as a result, plaintiff cannot predicate an action for rescission of the deed on the misrepresentation as to the applicable law by the probate attorney.

### IV.

There remains the issue as to the right of plaintiff to participate in the return from

oil production from the tract in Section 20 by virtue of his ownership of an undivided interest in the 140 acres, since the lease of 1920 covers both tracts. The question presented is whether an owner of an interest in a subdivision of a tract of land covered by a single lease has a right to participate in the royalty from oil produced on other subdivisions.

■ There is a conflict of authorities on this question but the majority and Oklahoma rule is to the effect that oil production belongs solely to the owners of the well and the land on which the well is located. Kimbley v. Luckey, 72 Okl. 217, 179 P. 928; Musgrave v. Musgrave, 86 W. Va. 119, 103 S.E. 302, 16 A.L.R. 564; McIntire's Adm'r v. Bond, 227 Ky. 607, 13 S. W.2d 772, 64 A.L.R. 630. For a well reasoned exposition of the minority view, see the dissenting opinion of Justice Poffenbarger in Musgrave v. Musgrave, supra.

■ The court is of the opinion that the minority view which follows the common law rule of apportionment of rent is more consonant with reason and justice. The nonproducing tract is burdened with the lease and the owner thereof should receive his proportionate share of the benefit from the exploitation of the oil reserve. This court is bound, however, by the Oklahoma decisions and by that law the plaintiff is not entitled to share in the oil royalty from the noncontiguous producing twenty acres.

■ To eliminate controversies and alleviate hardships resulting from situations similar to the instant case, parties to modern leases have inserted in most instances what has been termed the "entirety clause". This clause specifically provides for the apportionment of all royalty if the leased premises are thereafter owned in severalty or in separate tracts. Oklahoma courts have given this clause a reasonable interpretation and allowed pro rata sharing of the royalty among the owners of the subdivision of a tract under a single lease regardless of the location of the producing wells. Eason v. Rosamond, 173 Okl. 10, 46 P.2d 471; Gypsey Oil Co. v. Schonwald, 107 Okl. 253, 231 P. 864.

### V.

■ It is the judgment of the court that the relief sought by plaintiff must be denied and judgment entered for the defendants, and the royalty payments withheld by Rudco Oil and Gas Company pending the determination of this action be paid to Onnie Burgess, nee Cully.

### VI.

Counsel are directed to prepare a judgment in accordance with these findings of fact and conclusions of law, and submit it to the court within ten days from this date.