**289 P.2d 957**

**Jesse W. RALEY and Mary J. Raley, Plaintiffs-Appellees,**

v.

**J. Hiram MOORE; Alice L. Childers, Executrix of the Estate of William R. Childers, Deceased; and Alice L. Childers, Individually, Defendants-Appellants.**

**No. 5954.**

Supreme Court of New Mexico.

Nov. 4, 1955.

Neal & Girand, Hobbs, for appellants.

Williams & Johnson, Hobbs, for appellees.

COMPTON, Chief Justice.

This is a quiet title action brought by appellees. On February 3, 1942, appellees executed an oil and gas lease in favor of C. P. Yadon upon the W 32½ acres of the SE¼ SW¼, SW¼ SW¼, Section 8; the NW¼ NW¼ and the W 32½ acres of the NE¼ NW¼, Section 17, Township 20 South, Range 38 East, containing 145 acres, with a primary term of 10 years and as long thereafter as oil and gas should be produced

from the premises. Subsequently, and during the primary term of the lease, appellees conveyed to appellant Moore an undivided 4/13 interest, 10 royalty acres, and to W. R. Childers, predecessor in title to Alice L. Childers, an undivided 9/13 interest, 22½ royalty acres, in and under the W 32½ acres of the NE¼ NW¼ of said Section 17. Appellees seek to quiet their title to the premises retained by them. Appellants deny appellees' alleged ownership and, by cross-complaint, allege that by reason of their ownership of the W 32½ acres of the NE¼ NW¼, Section 17, covered by the lease to Yadon, they are entitled to participate in all oil and gas rentals and royalties in the ratio as their interests bear to the whole and undivided fee. The rentals and royalties involved are from oil and gas produced from the premises retained by appellees. The trial court found in favor of appellees and the cause is brought here for review.

■ Appellants' position is without substance. Where a portion of the leased premises is subsequently conveyed by a lessor, rentals and royalties will not be apportioned on the basis of acreage in the absence of an express contract to that effect. Garza v. De Montalvo, 147 Tex. 525, 217 S.W.2d 988; Kimbley v. Luckey, 72 Okl. 217, 179 P. 928; Pierce Oil Corp. v. Schacht, 75 Okl. 101, 181 P. 731; Galt v. Metscher, 103 Okl. 271, 229 P. 522; Carlock v. Krug, 151 Kan. 407, 99 P.2d 858; Pitts-

burgh & West Virginia Gas Co. v. Ankrom, 83 W.Va. 81, 97 S.E. 593, 5 A.L.R. 1157; Osborn v. Arkansas Territorial Oil & Gas Co., 103 Ark. 175, 146 S.W. 122; Boren v. Burgess, D.C., 97 F.Supp. 1019. The record before us does not disclose such agreement.

Appellants rely strongly on Schrader v. Gypsy Oil Co., 38 N.M. 124, 28 P.2d 885, 888, as supporting their position. The Schrader lease contains the provision " 'If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage.' " The lease under consideration is 88 Producers Special and contains no such provision. The lesser interest and severability clause appearing in the lease upon which appellants rely, cannot be considered as having the effect of an "entirety clause." The Schrader case, therefore, is thus distinguished and is not in point.

■ The conveyances to appellants contain the following provision:

"Said land being now under an oil and gas lease executed in favor of various parties, it is understood and agreed

that this sale is made subject to the terms of said lease, but covers and includes (⁴⁄₁₃ interest as to Moore and ⁹⁄₁₃ interest as to Childers) of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease as to said lands above described only."

The foregoing provision is clear and when construed with the Yadon lease, which makes no provision for apportionment, we are readily led to the conclusion that rentals and royalties produced from appellees' lands, are not apportionable. Appellants, severally, are entitled to receive rentals and royalties only on oil and gas produced from their respective premises.

The case of Carlock v. Krug, supra, and this one are so nearly alike on the facts, we quote therefrom at length [151 Kan. 407, 99 P.2d 861]:

"* * * Appellant concedes that under the majority doctrine oil production belongs solely to the owners of the well and of the land on which the well is located. * * *

"While admitting that the majority doctrine, as heretofore stated, would be fatal to his contention, appellant argues that 'this is not the law now.' He contends that it has all been changed—'immediately after the decision of Galt v. Metscher, 103 Okl. 271, 229 P. 522'—

by the inclusion in oil [and gas] leases for the first time of the following provision: '* * * if said lessor owns a less interest in the above described lands than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid to the lessor only in the proportion which his interest bears to the whole and undivided fee.'

"Appellant relies heavily upon the Oklahoma case of Gypsy Oil Co. v. Schonwald, 107 Okl. 253, 231 P. 864, in which it was held that one purchasing part of the land covered by a lease thereby acquired an interest in the royalty on the whole acreage, prorated in the proportion that his parcel bore to the entire tract. The fatal weakness of the argument is, however, that the provision or covenant involved in the Gypsy Oil Co. case, supra, was not at all the same provision which appears in the instant lease. The determining clause in the Gypsy Oil Co. case, as well as in the case of Schrader v. Gypsy Oil Co., 38 N.M. 124, 28 P.2d 885, and Eason v. Rosamond, 173 Okl. 10, 46 P.2d 471, 472, reads as follows: 'If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall

be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage.'

"Such a provision has been called an 'entirety clause.' It is being frequently inserted in present day leases to avoid the hardship that may sometimes arise under the majority rule heretofore stated and to provide, when the lease is made, that the lessee shall develop the original tract as a unit and apportion royalties among the owners of separate tracts in case the original tract is subdivided. This question of division of royalties between transferees of portions of land subject to the lease where the lease contains an express provision for apportionment is fully discussed in 3 Summers on Oil and Gas, Per. Ed., § 609, pp. 533–535, and many cases are there cited. The provision in the instant case relied upon is not such an 'entirety clause.' It has long been a usual provision commonly carried in oil and gas leases, and its obvious purpose is merely to provide that if it develops subsequent to the lease, that the lessor did not in fact have full title to the tract, he should receive royalties only in the proportion which his interest bears to the full title.

The provision has no reference to any future subdividing of the original tract. This is clear not only from the wording itself but is further indicated by the fact that leases which now include the new 'entirety clause' ordinarily still retain the old provision upon which appellant relies."

 Yadon assigned the lease to Amerada Petroleum Corporation. In November, 1951, Amerada began drilling operations upon the premises owned by appellees. It was then apparent that the lease was soon to expire by its terms; whereupon, appellees and appellants jointly signed a so-called "lease agreement" with Amerada, which reads:

"Whereas, on February 3, 1942, Jesse W. Raley and wife, Mary J. Raley, as lessors, executed an oil and gas lease to C. P. Yadon, as lessee, recorded in Book 42, page 264 of the Records of Lea County, New Mexico, which lease is now owned by Amerada Petroleum Corporation;

"Now, Therefore, the undersigned lessors in consideration of Ten and 0%100ths Dollars ($10.00), receipt of which is hereby acknowledged, have granted, demised, leased, and let and by these presents do grant, demise, lease and let to Amerada Petroleum Corporation the land described in said lease

for a term of ten years and six months from February 3, 1942, and as long thereafter as oil and gas, or either of them, is produced from said land by the said Amerada Petroleum Corporation, its successors or assigns on the terms and subject to the conditions of the above described lease as hereby extended."

It is argued that where separate owners of contiguous tracts jointly execute an oil and gas lease, the several tracts constitute a single unit for the disposition of the oil and gas produced therefrom and that the owners of contiguous tracts are entitled to participate pro rata in production from either tract. Be that as it may; we do not construe the agreement as creating a new lease. The agreement merely extended the primary term of the lease for 6 months and as long thereafter, etc. Moreover, it is clear that appellants at first did not look upon the "lease agreement" as having the effect of a new lease, or that they had the right to participate proportionately thereunder. Shortly after signing the extension agreement, appellant Moore unsuccessfully tried to have the parties sign a pooling agreement in which he made no claim to apportionment. On January 10, 1952, he also wrote a letter to Amerada which clearly shows that he was not then contending that the lease agreement constituted a joint lease. Further, at the request of Amerada, he signed a division order in which he made

no such claim. Appellant Childers, likewise, signed a similar division order and made no claim to the royalty or rentals.

The finding of the court was warranted. The judgment will be affirmed, and it is so ordered.

LUJAN, SADLER, McGHEE and KIKER, JJ., concur.